Turney, J.,
delivered the opinion of the Court.
The ruling of the Circuit Court in admitting the testimony of Mynatt, that Goss, who was dead, and who had been examined as a witness before a processioning jury, said to that jury that Martin’s corner was on Potter’s Knob, that he was not present when the corner was made, that Nelson’s corner was at the pine *434 in the glade on the other side of “Mitchell’s Knob,” and in admitting the testimony of Vm. Smith, that “Goss said he, as agent, made the deed to the top of Potter’s and Mitchell’s Knobs, and that Martin’s corner ■was on Potter’s Knob,” is error.
An action of ejectment was commenced by the plaintiff in error, against defendant in error, in the Circuit Court of Knox county, to the June Term, 1860, for land embraced in the following boundaries: Beginning on the south bank of Bull Bun, Moses Martin’s corner, thence with said line to the top of the Brushy Valley Knobs to a stake; thence down said Knobs with the extreme height to a stake, Nelson’s corner; thence with said line to a large water oak on the south bank of Bull Bun, Nelson’s corner; thenco up said creek as it meanders to the beginning station. Verdict and judgment in the Circuit Court for defendant, and an appeal to this Court. The question is one of boundary, the objective points being the boundary and corner on the top of “the Brushy Valley Knobs.” There is much proof in the record as to what are the Brushy. Valley Knobs. Some witnesses fixing by reputation that title, as defendant insists, to the range of hills called Potter’s and Mitchell’s Knobs, and others, as plaintiff insists, locating them as between the last named hills and Copper Bidge, and beyond said hills, from the beginning corner of the tract embraced in the boundaries set out in the deed from Alvis by his Attorney, in fact, Goss, to Thos. Draper, of 16th June, 1829.
On the trial of the cause, the plaintiff was permitted, over the pbjection of the defendant, to introduce the testimony recited above.
*435 The testimony of Mynatfc was incompetent, because he, Goss, was not an actor; he was not the surveyor who established the corners, nor was he present when they were established. He does not show that he was even at the corners, or had them pointed out to him by any person, whose declarations are competent under the law. JSTor do his declarations show any knowledge from any source, of the establishment and existence of the corners, nor does he with any certainty, locate the corners from the statement as detailed. We must infer he never saw the corners; and that his declarations do not fall within the rule for proving boundary by reputation.
The processioning spoken of is not such as the law contemplates. The record shows no regular or legal steps; therefore, we are relieved from determining the admissibility of the testimony of a dead witness, the rule being, that, in order to warrant the reception of evidence of what a deceased witness swore on a former trial between the same parties, it is necessary to prove, not only the death of that witness, but also that his testimony was given in a cause legally pending between the same parties. Such evidence must be given before parol evidence of what the deceased witness swore upon a former trial, can be admitted. 1 Starkie Ev., 158. In addition to the fact that there is no pretense that the processioning was legal, it does not appear that Goss made the statement under oath.
If the processioning had been legal, and Goss examined upon his oath, we are not prepared to hold that his testimony would have been competent for either party to this action. Processioning, in our law, is derived *436 from the perambulations of tbe common law, in wbicli the proceedings and return of the jury or persons making them, and their acts, and those of their assistants, such as marking boundaries, setting up monuments and the like, including their declarations respecting such acts, made during the transactions, are evidence against the parties between whom the perambulation was made; but we have been unable to find where it was ever held that the acts or declarations of third persons, disconnected with the perambulation, were admitted. In the case at bar, it does not appear that the jury taking the testimony, was even upon the premises at the time of Goss’ statements; much, less does it appear that it and Goss were at the corners spoken of, for any purpose at all. The testimony of Smith is obnoxious to the above, and also the further objection, that it is contradictory of the deed made by Goss, as agent and attorney for Alvis to Draper, the latter not being shown to be present, and is consequently not to be affected by it under any of the circumstances in this case.
The testimony was calculated to mislead the jury in weighing the question of disputed boundary, they most likely disregarding all the other testimony, and basing their verdict upon this. The evidence of Mynatt and Smith was purely hearsay, invading the province of the jury, in deciding what are the Brushy Valley Knobs — the main point in issue.
Judgment reversed, and cause remanded.